UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TSALTA MARINE, LLC<br>        Plaintiff,<br><br>-against-<br><br>*M/V SANCTUARY*, her engines, tackle, apparel, boats, appurtenances, etc., *in rem,* and<br>HORNBLOWER CRUISES & EVENTS, INC., HORNBLOWER CRUISES AND EVENTS, LLC, and BOSTON HARBOR CRUISES LLC, *in personam*,<br><br>        Defendants. | C.A. No. ⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>**Admiralty 9(h)** |

**VERIFIED COMPLAINT**

Plaintiff, Tsalta Marine, LLC (hereinafter "Plaintiff"), by and through its attorneys, Holland & Knight LLP, respectfully files its Verified Complaint against defendant *M/V SANCTUARY* (the "*SANCTUARY*"), her engines, tackle, boilers, appurtenances, etc., *in rem*, defendants Hornblower Cruises and Events, Inc., Hornblower Cruises and Events, LLC and Boston Harbor Cruises, LLC, *in personam* (the *in personam* defendants are referred to collectively as "Owners"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an admiralty or maritime claim as provided in Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff was and is a business entity organized and existing under the laws of Maryland and maintains its principal place of business at 7550 Wisconsin Avenue, 6th Floor, Bethesda, Maryland 20814. Plaintiff owns and operates the *M/Y TSALTA* (Official # 70059), a 130 foot Westport Motoryacht (the "*TSALTA*").

4. Upon information and belief, defendant *SANCTUARY* is a U.S. flag passenger vessel that operates as a ferry in Boston Harbor and is now or will be within this District during the pendency of this action.

5. Upon information and belief, defendants Hornblower Cruises and Events, Inc. and Hornblower Cruises and Events, LLC (collectively, "Hornblower") were and are business entities organized and existing under the laws of Delaware with principal places of business at NBC Tower, 455 North Cityfront Plaza Drive, Suite 2600, Chicago, Illinois 60611, and at all material times were registered to do business in the Commonwealth of Massachusetts. At all material times, one of the Hornblower defendants was and is the owner of the *SANCTUARY*.

6. Upon information and belief, defendant Boston Harbor Cruises LLC was and is a business entity organized and existing under the laws of Delaware with a principal place of business at 1 Long Wharf, Boston, Massachusetts 02108. At all material times, defendant BHC was and is the operator of the *SANCTUARY*.

## FACTS

7. On August 4, 2020, the *TSALTA* was docked at the Boston Yacht Haven Inn & Marina in Boston Harbor. The *TSALTA* was situated on the southern side of the pier at Boston Yacht Haven Inn & Marina and moored with its port side to the pier.

#153733253_v1

8. A tropical storm/weather system was widely forecasted to impact the Boston Harbor area on August 4, 2020, and in fact the *TSALTA* was at berth in Boston Harbor to seek refuge from the storm. To prepare for the forecasted weather, the captain and crew of the *TSALTA* had put out extra lines and fenders on its port side to prevent the *TSALTA* from damaging itself against the pier, and had secured all loose deck items.

9. The storm approached and began impacting Boston Harbor at about 16:30 hours local time on August 4, 2020, as predicted. The storm brought with it high winds and gusts reaching up to 60 knots.

10. At around 16:50 hours local time, after the storm had arrived and winds had picked up, the *SANCTUARY* attempted to leave its berth, which was located to the south of the *TSALTA* and immediately adjacent to Boston Yacht Haven Inn & Marina.

11. The passengers and crew of the *TSALTA* watched as the *SANCTUARY* made no less than three attempts to depart its berth. On each of the first two attempts, the ferry was blown out of position and back into its berth by the high winds.

12. On the third of the *SANCTUARY*'s attempts to leave its berth, the *SANCTUARY* was blown out of position and set down on the *TSALTA* at its position moored against the adjacent pier.

13. The *SANCTUARY* allided (a nautical term meaning contact between a moving vessel and a stationary vessel or object) with the *TSALTA* on the *TSALTA*'s starboard side and became pinned against the *TSALTA* by the high winds, causing damage to the *TSALTA*'s hull. The *SANCTUARY* was unable to pull away from the *TSALTA*.

14. At the time of the allision, the *TSALTA* was moored to its dock and was not underway.

15. At the time of the allision, the *TSALTA* was moored at berth ordinarily used for such purposes in such a way that it did not in any way obstruct or interfere with ordinary navigation.

16. The *SANCTUARY* could not pull away from the *TSALTA* because of the high winds, so the crew of the *TSALTA* deployed fenders between the vessels and secured the *SANCTUARY* alongside the *TSALTA* as tightly and securely as possible under the conditions.

17. While secured alongside the *TSALTA*, the *SANCTUARY* continued to push against the starboard side of the *TSALTA*, causing further damage to the *TSALTA*'s starboard side. The *SANCTUARY* also pushed the *TSALTA* violently up against the dock, causing damage to the *TSALTA*'s port side as well.

18. As had been forecasted, the high winds and inclement weather passed through the area quickly. Once the winds subsided, the *SANCTUARY* easily pulled away from the *TSALTA*.

19. The allision caused extensive damage to the hull and paint of the *TSALTA*. While the allision did not cause significant structural damage, the damage caused to the hull and paint if left unrepaired would substantially diminish the value of the *TSALTA*.

20. As a result of the damage, the *TSALTA* has incurred, and will continue to incur, substantial repair costs and other expenditures.

21. In the days and weeks following the allision, representatives from defendant Owners accepted responsibility for the allision and assured Plaintiff that the defendant Owners would pay for all of the repair and painting costs, as well as incidental damages sustained as a result of the allision.

22. Shortly after the allision, while the *TSALTA* remained along the northeast United States seaboard, the Plaintiff first performed necessary and reasonable temporary repairs, inclusive of patch paint works to cover the deeply gouged and scared areas of the hull.

23. The *TSALTA* subsequently sailed to Fort Lauderdale, Florida in October 2020, where the *TSALTA* typically berths in the fall and winter months.

24. Due to the nature and extent of the damage to the *TSALTA*'s hull caused by the *SANCTUARY*, the *TSALTA* could not be permanently repaired by partial, or patch, paint works. The coatings required to cover the extensive and substantial areas of damage on both the starboard and port sides of the hull required that that the entire hull be repainted, as well as the superstructure, in order for the paint to match throughout. The extent of the paint works required to fully repair the *TSALTA* required that the *TSALTA* be placed in dry dock.

25. Plaintiff performed the first phase of the repairs in October 2020 at dry dock at the Lauderdale Marine Center, Fort Lauderdale, Florida. Paint works were performed while at dry dock by LUU Marine & Associated, Inc. The first phase of the repair project cost approximately $482,000, which costs included hauling and yard fees, paint works on the vessel's hull, replacing the vessel name and haling port on the transom, overhead and crew expenses, and crew housing.

26. Given the scope of the repairs required, however, it was anticipated that the entire repair project would not be completed during the October 2020 dry dock. Rather, the *TSALTA* would have to return to Lauderdale Marine Center to complete the paint works and, in particular, the painting of the *TSALTA*'s superstructure. While the superstructure was not directly damaged in the allision, as a result of the allision, to make the paint throughout the entire vessel and to restore the vessel to its pre-allision value, the extent of the damage to the *TSALTA*'s hull required that the painting of the entire vessel.

27. The *TSALTA* returned to Lauderdale Marine Center to complete the repairs and paint works on or about October 1, 2021, and as of the date of this Verified Complaint the second part of the paint works, including the painting of the *TSALTA*'s superstructure, is in progress.

28. The second part of the repairs is estimated to cost approximately $656,000, inclusive of yard fees, the painting of the vessel's superstructure, overhead and crew costs, and crew housing.

29. Plaintiff submitted to the defendant Owners the costs paid for the first phase of the repairs and paint works, and have demanded payment. Plaintiff has further put defendant Owners on notice with respect to the estimated costs associated with the second phase of the repairs and paint works currently in progress.

30. Although the defendant Owners had previously represented to the Plaintiff that they would take responsibility for the allision and would pay for the repairs and painting of the *TSALTA*, having received the costs and estimates from Plaintiff the defendant Owners refused payment and instead attempted to negotiate.

31. Plaintiff attempted in good faith to negotiate a reasonable settlement with the defendant Owners, but those attempts have failed.

## COUNT I – MARITIME NEGLIGENCE
### (Against Defendant Owners, *In Personam*)

32. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

33. Defendant Owners, as owners and operators of the *SANCTUARY*, had a duty to maintain and operate a seaworthy vessel, to exercise due care in the operation of that vessel, and to man that vessel with an adequate and properly trained captain and crew.

34. Defendant Owners violated their duties on August 4, 2020, when they negligently ordered the *SANCTUARY* to depart its berth during severe weather, endangering the safety and wellbeing of the *SANCTUARY* and its crew, as well as the safety and wellbeing of all surrounding vessels.  Furthermore, as the severe weather that day was forecasted to pass through the area quickly, it was unreasonable for the defendant Owners to have failed to order the *SANCTUARY* to remain safely at berth until the weather system passed.

35. Defendant Owners further violated their duties and failed to exercise due care in the operation of the *SANCTUARY* when, after the *SANCTUARY* made two failed attempts to leave its berth, defendant Owners failed to order the *SANCTUARY* to remain at berth until the inclement weather passed.

36. Defendant Owners further violated their duties and failed to exercise due care as owners and operators by failing to man the *SANCTUARY* with a properly trained captain and by failing to adequately crew the *SANCTUARY*.  In this regard, the *SANCTUARY* was improperly manned and was unseaworthy at the commencement of the voyage.

37. As a direct and proximate result of the defendant Owners' negligence, and due to the negligent operation of the *SANCTUARY*, the *SANCTUARY* lost navigational control and allided with the *TSALTA* causing Plaintiff and the *TSALTA* substantial damages.

38. As a direct result of the allision and defendant Owners' negligence, Plaintiff has sustained damages currently estimated to be $1,138,000, which damages continue to accrue as repair and paint works on the *TSALTA* are ongoing as of the date of this Verified Complaint, none of which has been paid though duly demanded.

## COUNT II – MARITIME NEGLIGENCE
### (Against Defendant *SANCTUARY*, *In Rem*)

39. Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

40. The *SANCTUARY*, while in motion and underway, struck an allided with the stationary *TSALTA* while at berth.

41. As a result of the *SANCTUARY*'s alliding with the *TSALTA*, the *TSALTA* sustained damage to its hull and widespread degradation of exterior condition, which have resulted in Plaintiff sustaining significant monetary damages.

42. As the offending vessel, the *SANCTUARY* is liable *in rem* for the allision and resulting damages to the *TSALTA*, and the Plaintiff has a valid maritime lien against the *SANCTUARY* in the amount of its damages estimated to be $1,138,000 as of the date of this Verified Complaint, none of which has been paid though duly demanded.

**WHEREFORE**, Plaintiff Tsalta Marine, LLC prays:

1. That *in rem* process, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, may issue against the whole of the *in rem* defendant *M/V SANCTUARY*, her engines, tackle, boilers, appurtenances, etc., pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure;

2. That all persons or entities having or claiming any interests in the *M/V SANCTUARY* be cited to appear and answer under oath;

3. That a judgment in condemnation and sale be entered against the *in rem* defendant *M/V SANCTUARY* in the amount of any judgment recovered by the Plaintiff, with costs and interest to be paid out of the proceeds thereof;

4. That a judgment be entered against the *in personam* defendant Owners for damages as may be finally determined by this Court together with interest, reasonable attorneys' fees and costs; and

5. That this Court grant such other and further relief as may be just and proper in the circumstances.

Dated: December 17, 2021
Boston, Massachusetts

          HOLLAND & KNIGHT LLP

          *s/ Robert Shaw*
          Robert Shaw
          10 St. James Avenue
          11th Floor
          Boston, Massachusetts 02116
          (617) 523-2700
          robert.shaw@hklaw.com

          Michael J. Frevola
          F. Robert Denig
          Holland & Knight LLP
          31 West 52nd Street
          New York, New York 10019
          (212) 513-3200
          michael.frevola@hklaw.com
          robert.denig@hklaw.com
          (*pro hac vice* application to be submitted)

#153733253_v1

## **VERIFICATION**

Michael J. Frevola, being duly sworn, deposes and says:

1. I am a member of the law firm of Holland & Knight LLP in its New York office and I am the lead attorney for plaintiff Tsalta Marine, LLC in the referenced matter .

2. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, except as to these matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

3. The source of my information is my communications with personnel of Tsalta Marine, LLC as well as my review of Tsalta Marine LLC's records or documents on file.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on the 17th day of December 2021 in Port Washington, New York.

                                                           *s/ Michael J. Frevola*
                                                         Michael J. Frevola

#153733253_v1